UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ALVIN TROY GARCIA,

      *Plaintiff*,

v.

DOUGLAS A. TULINO, Acting Postmaster General,

      *Defendant*.

Civil Action No. 1:22-cv-03838 (CJN)

### MEMORANDUM OPINION

Plaintiff Alvin Troy Garcia asserts various discrimination and retaliation claims against his former employer, the United States Postal Service. ECF No. 1 (Complaint) ¶¶ 75–110. The Government moves to dismiss (or alternatively for summary judgment), largely on the grounds that Garcia failed to exhaust his claims. ECF No. 33. For the reasons that follow, the Court agrees and grants the Government's Motion to Dismiss.

      **I.**      **Background**

Garcia is a former USPS employee who alleges that the agency discriminated against him based on his race and disability and then retaliated against him for complaining about his treatment and the conditions of his telework accommodation. *See* Compl. ¶ 18.[1] During the relevant time, Garcia was employed as a Senior Instructional Design Specialist. *Id.* ¶ 20. His responsibilities "were primarily computer based and he was able to execute all of his duties remotely." *Id.* Garcia,

---

[1] The Court draws the following from the allegations set forth in Garcia's Complaint, which at the motion-to-dismiss stage are, of course, accepted as true. *See NB ex rel. Peacock v. D.C.*, 794 F.3d 31, 42 (D.C. Cir. 2015).

1

who is black, was directly supervised by team lead Shashi Gowda and manager Taren Reynolds, both of whom are white males. *Id.* ¶ 21.

In August 2019, Garcia notified his supervisor (he doesn't say which one) about his upcoming knee surgery to discuss the potential impact on his ability to work. *Id.* ¶ 22. He underwent surgery on September 30, 2019, and was on bed rest until October 13, 2019. *Id.* ¶ 23. On October 7, Garcia requested permission to work from home, and was granted such permission until November 14, 2019. *Id.* ¶¶ 24–25. Garcia alleges that he "was under the impression that the only required condition for him to telework was that he continue to be readily available, continue to produce quality work products, and that he be responsive to customers and management." *Id.* ¶ 26. "No additional terms of conditions of employment were discussed with him at this time," and "at no point in time did [he] deviate from these conditions." *Id.* ¶¶ 26–27.

In November 2019, Gowda requested that Garcia provide hourly updates in addition to daily ones. *Id.* ¶ 28. Garcia complied but felt that this was a sign of differential treatment. *Id.* When he later raised his concerns with Reynolds, Reynolds "snapped that [Garcia] should not compare himself to anyone else, because he is the only person working from home five days a week." *Id.* ¶ 30. Reynolds' reaction "struck a chord with [Garcia] as the only Black male on his team." *Id.* Both Reynolds and Gowda told Garcia that they had no issues with his performance, but Reynolds also noted that because of Garcia's type of work, "he did not know how to gauge Mr. Garcia's performance." *Id.* ¶ 33. For the next two weeks, Garcia submitted an Excel spreadsheet tracking his hourly work, which Gowda confirmed met USPS's expectations for the telework arrangement. *Id.* ¶ 35–36.

On December 5, 2019, an email alerted Garcia that his "telework privileges" were being revoked due to his "failure to follow telework requirements." *Id.* ¶ 38. The email told Garcia to

2

either report to work in person or take sick leave. *Id.* That same day, after receiving a call about a family emergency, Garcia emailed Reynolds and Gowda to say he would need to take leave from December 6 through December 14. *Id.* ¶ 39. Also on December 5, Garcia contacted an Equal Employment Opportunity (EEO) counselor "to inquire about filing an EEO complaint as a result of Mr. Reynolds's discriminatory treatment based on his protected characteristics, his medical condition, and him needing a reasonable accommodation." *Id.* ¶ 37.

Garcia returned from leave on December 16, 2019. *Id.* ¶ 42. On December 20, he inquired into "why his reasonable accommodations were revoked" and was told that his most "egregious" offense was being away from his desk for roughly thirty minutes. *Id.* ¶¶ 41–43. Reynolds also "revealed his concern about some apparent pattern" from Garcia's past, a comment which "made [Garcia] more suspicious that Reynolds had an axe to grind against him." *Id.* ¶ 43.

Garcia alleges that later in the day on December 20, he called the EEO office to inquire about the status of his initial submission to initiate an EEO Complaint and was told that his claim was never processed to a case manager. *Id.* ¶ 44. Garcia also alleges that the EEO Representative, Arlene Gordon, told Garcia that he "did not have an EEO case because he was not discriminated against" and that he could withdraw his inquiry without management ever being made aware of his claim. *Id.* Garcia requested the weekend to think on it. *Id.* ¶ 45. A few days later, Garcia alleges, Gordon called Garcia to ask whether he would "withdraw" his inquiry and, a few days after that, emailed Garcia a withdrawal form, which he did not complete. *Id.*

On or about January 2, 2020, Gordon told Garcia that if he did not withdraw his inquiry she would inform management about his claim. *Id.* ¶ 46. Feeling intimidated, partly because "Gordon had already advised him that he was, in her eyes, not being discriminated against," Garcia responded and indicated that he would "withdraw" his EEO claim. *Id.* The next day, Garcia

3

contacted Human Resources to discuss further action because he was still distressed by management's treatment of him. *Id.* ¶ 47. Garcia spoke with Tanya Cousin, who told him that he should not have withdrawn his claim and that Gordon should not have advised him to withdraw because he had a legal basis to pursue an EEO claim. *Id.*

On or about January 21, Garcia received medical clearance to return to work. *Id.* ¶ 50. And on or about January 30, 2020, Garcia and Reynolds discussed Garcia's leave status, some of which was characterized as administrative leave and some sick leave. *Id.* ¶ 51. They argued over whether Garcia should have requested sick leave; Garcia alleges that Reynolds stated that the request for an audit into his sick and administrative leave was "suspicious." *Id.* ¶ 53. Reynolds "then began to berate and disparage [Garcia's] character and integrity" and brought up a previous injury Garcia suffered in the past. *Id.* Garcia eventually "left and decided to submit his second EEO request because he again realized that he was being treated differently as a result of his race, medical condition and need for a reasonable accommodation." *Id.*

Garcia filed a formal complaint of discrimination with the USPS EEO Office on February 25, 2020, alleging retaliation and discrimination based on race and disability. *Id.* ¶ 6. He received an Order of Dismissal from an Administrative Judge on September 24, 2021, *id.* ¶ 7, and received the agency's Implementing Decision on February 11, 2022, which provided him 90 days from the date of receipt to file his civil complaint, *id.* ¶ 8.

Garcia filed suit on May 6, 2022, in the District of Maryland. *See generally id.* The case was later transferred to this Court. ECF No. 17.

## II.   Legal Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). A claim is facially plausible "when the plaintiff pleads

4

factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Although courts must accept as true all factual allegations in a complaint, the same deference is not owed to legal conclusions. *Id.* Plaintiffs therefore cannot rely on "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.* Nor are courts "bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

"If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). But in "the context of exhaustion"—an affirmative defense the Government raises here—"courts are willing to rely upon administrative orders and administrative complaints without converting the motion into one for summary judgment when the documents are referred to in the complaint, are integral to the plaintiff's exhaustion of administrative remedies, and are public records subject to judicial notice." *Vasser v. McDonald*, 228 F. Supp. 3d 1, 9–10 (D.D.C. 2016) (cleaned up). Courts have taken judicial notice of public administrative charges and parties' administrative complaints when no party disputes their authenticity in part because, "[i]f courts could not take judicial notice of such public documents, plaintiffs who obviously had not complied with the administrative-exhaustion process could survive motions to dismiss purely by failing to attach their administrative complaint." *Id.* at 10.

In moving for summary judgment in the alternative, the Government attaches multiple documents outside the pleadings. *See* ECF No. 33, Attachments 2–9. Because the Court relies solely on the pleadings and the Administrative Judge Decision and Order of Dismissal in resolving the Government's Motion to Dismiss, *see* ECF No. 33-2, the Court does not convert the motion into a Motion for Summary Judgment. *See Vassar*, 228 F. Supp. 3d at 11 ("The Court takes judicial

5

notice of the . . . Final Agency Decision's description of the dates on which Plaintiff engaged the administrative process.").

### III.   Analysis

Garcia asserts four distinct claims: race-based discrimination in violation of Title VII, disability-based retaliation in violation of the Rehabilitation Act, retaliation in violation of Title VII, and a violation of Section 1981. Garcia's Title VII and Rehabilitation Act claims fail because he failed to exhaust his administrative remedies. His Section 1981 claim fails because the Government has not waived sovereign immunity to § 1981 suits.

#### A.   Title VII Claims

Under Title VII, "the two essential elements of a discrimination claim are that (i) the plaintiff suffered an adverse employment action (ii) because of the plaintiff's race, color, religion, sex, national origin, age, or disability." *Baloch v. Kempthorne*, 550 F.3d 1191, 1196 (D.C. Cir. 2008). As to retaliation, a plaintiff "must establish that he or she suffered (i) a materially adverse action (ii) because he or she had brought or threatened to bring a discrimination claim." *Id.* at 1198. But before a plaintiff can bring either claim in federal court, he must exhaust his administrative remedies. *Haynes v. D.C. Water & Sewer Auth.*, 924 F.3d 519, 526 (D.C. Cir. 2019). "That means 'fil[ing] an administrative charge with the EEOC and allow[ing] the agency time to act on the charge' before commencing litigation." *Id.* (quoting *Park v. Howard Univ.*, 71 F.3d 904, 907 (D.C. Cir. 1995)). "To start the administrative process, an employee must contact an [EEO] Counselor at his employing agency within 45 days of the alleged discriminatory conduct." *Coleman v. Duke*, 867 F.3d 204, 206 (D.C. Cir. 2017) (citing 29 C.F.R. § 1614.105(a)(1)). Because exhaustion inquiries focus on each discrete discriminatory act that is alleged by an employee, *see Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 110–11 (2002),

"a Title VII plaintiff must timely exhaust administrative remedies for each discrete act alleged, even if the acts are related." *Mount v. Johnson*, 36 F. Supp. 3d 74, 84 (D.D.C. 2014) (cleaned up).

### 1. Discrimination

Garcia's Title VII discrimination claim alleges four discriminatory acts: (1) when he "received accommodations that were more heavily restricted and scrutinized and ultimately revoked in a way that was not done to any non-Black employees who worked remotely"; (2) "when he was provided false information by the agency's EEO Office regarding accessing and filing his EEO complaint"; (3) when his "telework arrangement" was revoked; and (4) when he received "negative comments about his condition" and was provided with "additional employment conditions as a result of his condition." Compl. ¶ 56. Garcia's telework arrangement was granted on October 14, 2019, and he noticed his "more heavily restricted and scrutinized" accommodations in November 2019. *Id.* ¶¶ 25, 77. Even assuming those discriminatory conditions were not evident to Garcia until the last day of November, he had only until January 14, 2020, to file a complaint with the EEOC within the 45-day window. As for the revocation of his teleworking arrangement on December 5, *id.* ¶ 38, Garcia had until January 19, 2020, to file a EEO complaint about that incident. As to Garcia's allegation that he was "provided false information by the agency's EEO Office" on or about January 2, 2020, *id.* ¶¶ 46, 56, the 45-day window closed on February 16, 2020. Finally, Garcia's allegation about the negative comments and additional conditions he received concerned his conversations with Gowda and Reynolds in November 2019. *Id.* ¶¶ 28–32. Garcia's window to challenge that conduct thus also closed on January 14 at the latest.

Garcia did not act in time to challenge any of those actions. Although he contacted an EEO counselor on December 5, 2020, Compl. ¶ 38, he later withdrew that claim. *See id.* ¶ 44–46 and ECF No. 33-2, at 3 (ALJ Decision). Garcia did not re-submit his claim until February 25, 2020, Compl. ¶ 6, well outside the 45-day window for each of the actions that Garcia asserts are

7

discriminatory. *See Coleman*, 867 F.3d at 206; *Mount*, 36 F. Supp. 3d at 84. Those claims therefore must be dismissed under Rule 12(b)(6) as improperly exhausted.[2]

### 2. Retaliation

Garcia also alleges that the Postal Service retaliated against him in violation of Title VII for initiating an EEO Complaint. Compl. ¶ 82. His retaliation allegations echo his discrimination claims, asserting that the USPS retaliated against him by (1) extending accommodations that were more heavily restricted and scrutinized and ultimately revoked in a way that was not done to any non-black employees who worked remotely; (2) providing false information by the agency's EEO Office regarding his EEO complaint; (3) revoking his telework arrangement on the same day that he contacted the EEO counselor; and (4) making negative comments about his condition and providing him with additional employment conditions as a result of his disability. *Id.* But Title VII retaliation claimants must also "timely exhaust the[ir] administrative remedies before bringing their claims to court." *Payne v. Salazar*, 619 F.3d 56, 65 (D.C. Cir. 2010) (citation omitted). His retaliation claims thus fail for the same reason as his discrimination ones.[3]

---

[2] Garcia offers no answer to the Government's exhaustion argument in his Response, instead emphasizing the impropriety of summary judgment. *See* ECF No. 37. Courts generally "will not make arguments for the litigant[.]" *Loumiet v. United States*, 65 F. Supp. 3d 19, 25 (D.D.C. 2014) (quotation omitted). But read most charitably, Garcia's response to the Government sounds in equitable estoppel. That is, he appears to contend that because an EEO counselor "incorrectly advised" him about his initial, withdrawn EEO complaint, Compl. ¶ 44, the exhaustion window should be extended. But "[c]ourts within this Circuit have routinely found that a government employee's erroneous advice cannot alone give rise to an equitable estoppel claim." *Hall v. Dep't of Com.*, No. 16-cv-01619 (EGS), 2018 WL 2002483, at *4 (D.D.C. Apr. 30, 2018). Garcia points to nothing else, and thus cannot clear the "high hurdle" required to prove equitable estoppel. *Id.*

[3] Garcia also fails to allege that he suffered an adverse action *because* he "brought or threatened to bring a discrimination claim." *Baloch*, 550 F.3d at 1198. In fact, Garcia's Complaint alleges that management never even knew about his initial EEO complaint—which is why he was offered the chance in January to withdraw it before management learned of it. Compl. ¶ 46. There is thus no plausible basis on which to infer that Garcia suffered retaliation for lodging a discrimination complaint.

### B. Rehabilitation Act Claim

Garcia's Rehabilitation Act discrimination claims mirror his Title VII discrimination claims. *Compare* Compl. ¶ 56 with *id.* ¶ 75. But, like Title VII, "[t]he Rehabilitation Act requires individuals to exhaust administrative remedies before they can file suit to enforce the Act's protections." *Doak v. Johnson*, 798 F.3d 1096, 1099 (D.C. Cir. 2015). Because the same 45-day requirement for Title VII claims also applies to claims brought under the Rehabilitation Act, *see id.*, Garcia's Rehabilitation Act claims must be dismissed.

### C. Section 1981

Finally, Garcia alleges that he "was subjected to the unlawful conduct and adverse actions alleged throughout [his] Complaint under Section 1981." Compl. ¶ 102. Section 1981 states that all persons in the United States shall have "the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws." 42 U.S.C. § 1981(a). But "Section 1981 does not contain an express waiver of sovereign immunity." *Holley v. United States*, No. CV 24-1536 (LLA), 2025 WL 266532, at *5 (D.D.C. Jan. 22, 2025). The Court thus lacks jurisdiction over Garcia's Section 1981 claim. *See United States v. Mitchell*, 463 U.S. 206, 212 (1983) ("[T]he United States may not be sued without its consent and . . . the existence of consent is a prerequisite for jurisdiction.").

### IV. Conclusion

For the foregoing reasons, the Government's Motion to Dismiss, ECF No. 33, is granted. A separate Order accompanies this Opinion.

DATE: September 11, 2025

CARL J. NICHOLS
United States District Judge