**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| |
|---|
| MATTHEW McGOUGH,<br><br>　　　　　*Plaintiff*,<br><br>　　v.<br><br>UNITED STATES OF AMERICA,<br><br>　　　　　*Defendant*. |

Civil Action No. 1:23-cv-03628 (CJN)

**MEMORANDUM OPINION**

Plaintiff Matthew McGough was involuntarily separated from the United States Navy with an "Under Other Than Honorable Conditions" discharge characterization.  After he successfully challenged that characterization before a Navy review board, which upgraded his discharge to "Honorable," a further layer of review restored the Other Than Honorable designation.  McGough challenges that decision here.  *See* ECF Nos. 1 (Complaint), 15 (Amended Complaint, or "AC"). Both McGough and the Government have moved for summary judgment.  *See* ECF Nos. 23 (Pl. Mot.), 30 (Govt. Mot.).  For the reasons that follow, the Court will deny McGough's motion, grant the Government's, and enter judgment in the Government's favor.

## I.    Background

McGough joined the Navy in December 2015.  AR 129.  From 2016–17, he was stationed in Japan, at Marine Corps Air Station Iwakuni, and held the rank of Ensign.  AR 401.  While there, he met two female officers: Lieutenant Junior Grade (LTJG) H and Lieutenant (LT) S.  Pl. Mot. 5.  McGough and LTJG H began an intimate relationship in May 2017; she broke up with him around July 2017.  Pl. Mot. 5.  McGough then (by his own admission) "engaged in several immature and regrettable behaviors: taping notes to the door of her quarters, once visiting

unannounced and putting his foot in the door, and threatening to reveal that she was having an affair with a married man." Pl. Mot. 5. Because of that behavior, McGough's command issued a Military Protective Order on August 18, 2017, directing McGough not to communicate with LTJG H and to stay more than 100 feet away from her and her immediate family. Pl. Mot. 5. Despite that order, McGough sent text messages to LTJG H's friends and sister. AR 255, 261. McGough's command found that those actions violated the spirit of the order and issued a second one on September 8, 2017, preventing McGough from contacting LTJG H's family members and several of her friends. Pl. Mot. 5–6. McGough obeyed that order. AR 261–62.

On August 25, 2017, McGough met LT S at the Officers' Club at the Iwakuni base, where they talked about "trying to go on dates" over drinks; later that night, they went to McGough's room. AC ¶ 29. At that point, their stories diverge. LT S reported McGough for sexual assault in December 2017, which McGough denied, and both individuals testified before a Board of Inquiry in January 2019 about their August 2017 encounter. *See* AR 243–67. The Board of Inquiry also considered accusations that McGough had violated the first Military Protective Order and had sexually assaulted LTJG H. After meeting from January 14–16, 2019, the Board found that the evidence did not support the allegation that McGough sexually assaulted LTJG H but did support the other allegations. AR 269. The Board then voted to recommend that McGough be separated from the Navy with an "Other Than Honorable" characterization of service. AR 269–71, 414–418. On February 13, 2020, the Chief of Naval Personnel recommended to the Assistant Secretary of the Navy that McGough be separated from the Navy with that same characterization of service. AR 440–41. The Assistant Secretary agreed, approving McGough's separation one week later. AR 441.

McGough appealed that decision to the Navy Discharge Review Board.[1]  He initially requested a review based on documents and the written record alone, AR 308, and the Review Board denied relief.  AR 465–473.  McGough then petitioned the Review Board again and requested a hearing.  AR 54, 56–57.  This time, the Review Board granted relief, stating in its November 2022 decision that, "[a]fter a thorough review of the available evidence, to include Applicant's issues, summary of service, service record entries, and discharge process, the [Review] Board found the discharge was proper but not equitable."  AR 57.[2]  The Review Board therefore recommended the characterization of service be changed to "Honorable."  *Id.*

On December 5, 2022, the Director of the Secretary of the Navy Council Review Boards sent a letter notifying McGough that he was exercising his authority as the designated Secretarial Review Authority to review the November 2022 Review Board decision.  AR 53.  The Review Authority issued its decision on January 17, 2023, concluding that because the Review Board's decision to grant relief was not supported by the record, the Review Authority would set aside the

---

[1]  Some additional context on the Review Board:  Upon being discharged from the Navy, a servicemember is issued a "Certificate of Release or Discharge from Active Duty" that describes his "Character of Service."  An administrative discharge can be characterized in one of three ways:  Honorable, Under Honorable Conditions, or Under Other Than Honorable Conditions. 32 C.F.R. § 724.109(a).  A former servicemember's discharge characterization affects, among other things, eligibility for healthcare, disability, and retirement benefits.  *See, e.g.*, 38 C.F.R. § 3.12.  Given the import of this characterization, Congress directed each branch of the armed forces to "establish a board of review . . . to review the discharge or dismissal . . . of any former member of an armed force under the jurisdiction of [its] department."  10 U.S.C. § 1553(a); *see also id.* § 1553(b)(1) (providing that a discharge review board "may, subject to review by the Secretary concerned, change a discharge or dismissal, or issue a new discharge, to reflect its findings").  The Naval Discharge Review Board performs this role for the Navy.  *See Doe v. Emmert*, No. 1:23-CV-13112, 2025 WL 915700, at *1 (D. Mass. Mar. 26, 2025).

[2]  The Review Board has the power to upgrade a discharge on two bases: propriety or equity.  32 C.F.R. § 70.9.  Propriety encompasses errors of fact, law, or procedure.  *Id.* § 70.9(b).  Equity encompasses factors such as whether "relief is warranted based upon consideration of the applicant's service record and other evidence presented to the [Discharge Review Board]."  *Id.* § 70.9(c)(3).

Review Board's decision.  AR 29–30.  The Authority's January 2023 decision explained, in relevant part:

> I disagree with the [Review Board's] decision to grant relief. . . .  In reviewing the Applicant's case, there was no evidence, beyond speculation and conjecture, to corroborate the member's claim that his BOI was biased against him.  After reviewing the BOI transcript, the BOI's associated records/evidence, and the NDRB case file I am convinced that a preponderance of the evidence supports the specified reason for separation, separation from Naval service, and characterization of service as Other than Honorable.  Further, the Applicant was afforded all due process rights associated with a BOI and that the board members were not biased.  Absent actual evidence to the contrary, the NDRB is to presume regularity in governmental affairs, such that the Applicant's BOI was conducted in accordance with law and regulations, and that the Applicant was afforded all of his administrative rights.  Because no such evidence was presented, the presumption of regularity applies, and therefore an upgrade in the Applicant's characterization of service and reason for discharge is not warranted.
>
> In coming to my decision, I also considered whether clemency was appropriate.  In doing so, and similar to the [Review Board], I considered the Applicant's testimony and post-service conduct . . . [and] the character statements of [a Major and a Lieutenant].  While I commend your post-service efforts, I do not find those efforts are persuasive to warrant an upgrade on the basis of clemency to your characterization of service and reason for discharge.

AR 29–30.

McGough petitioned the Department of Defense's Joint Service Review Activity for reconsideration of the SRA's decision on February 1, 2023.  AR 12–17.  That entity responded that it did not conduct such inquiries and forwarded the request for reconsideration to the Department of the Navy.  AR 11.  The Secretarial Review Authority responded to McGough's petition for reconsideration with a memorandum on April 23, 2023, "declin[ing] to grant the relief" McGough requested but "address[ing]" McGough's "concerns."  AR 1.  The Authority explained that because, "[i]n essence, [McGough] contend[s] that the [Authority's] review was arbitrary and

capricious[,] [i]n response to [McGough's] inquiry," it would provide "more detailed . . . findings." AR 2. After elaborating over the course of several paragraphs why the Authority set aside the Review Board's holding and restored the judgment of the Board of Inquiry, *see* AR 2–5, the memorandum concluded:

> All told, I found your discharge from the Navy was proper. I found a preponderance of the evidence supported your separation from the Naval service on the basis of misconduct with a characterization of service of other than honorable. The BOI was convened and conducted in [ ] compliance with policy[.] . . . Your misconduct that led to the BOI was substantial and serious. The BOI found, and I agree, that your actions in August 2017 violated Articles 92, 120, and 133 [of the Uniform Code of Military Justice]. As further found by the BOI, your service was substandard. An other than honorable discharge is appropriately awarded when a member engages in conduct involving one or more acts or omissions that constitute a significant departure from the conduct expected of members of the Naval Service. Harassing fellow junior officers, violating a MPO, sexually assaulting a shipmate, and substandard performance are acts that constitute a significant department [sic] from the conduct expected of members of the Naval Service. An other than honorable discharge is equitable in light of your misconduct.

AR 5–6.

McGough filed this suit on December 6, 2023. ECF No. 1. Alleging that the Authority's decision was arbitrary, capricious, unsupported by substantial evidence, and contrary to applicable law and regulation, AC ¶ 69, McGough requests that the Court void it and order that the Review Board's decision be reinstated. AC ¶ 73.

## II.    Legal Standards

Summary judgment is appropriate only when the pleadings and evidence show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "Generally speaking, district courts reviewing agency action under the APA's arbitrary and capricious standard do not resolve factual issues, but operate instead as appellate courts resolving

legal questions." *James Madison Ltd. by Hecht v. Ludwig*, 82 F.3d 1085, 1096 (D.C. Cir. 1996). In resolving such questions, "the reviewing court must consider whether the agency's decision was based on consideration of relevant factors and whether there was a clear error of judgment." *Escobedo v. Green*, 602 F. Supp. 2d 244, 248 (D.D.C. 2009).

The APA allows "[a] person suffering legal wrong because of agency action" to seek judicial review of the agency action. 5 U.S.C. § 702; *see Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 882–83 (1990). Courts can review an agency action only when a statute makes the action reviewable or the action was a "final agency action for which there is no other adequate remedy." 5 U.S.C. § 704; *see Nat'l Wildlife Fed'n*, 497 U.S. at 882. While "[i]t is true that if an agency issues a new order after reconsideration, the new order constitutes final agency action that is subject to judicial review," *Am. Ass'n of Paging Carriers v. FCC*, 442 F.3d 751, 756 (D.C. Cir. 2006), "an agency's refusal to reconsider a final agency action does not create a new final agency action." *Historic E. Pequots v. Salazar*, 934 F. Supp. 2d 272, 279 (D.D.C. 2013). In determining whether an agency action is final, "[t]he core question is whether the agency has completed its decisionmaking process, and whether the result of that process is one that will directly affect the parties." *Franklin v. Massachusetts*, 505 U.S. 788, 797 (1992).

Once an agency action is properly subject to judicial review, a court must "hold unlawful and set aside agency action, findings, and conclusions" that are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). But the scope of review is "narrow." *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). The agency's decision is presumed to be valid, and a court must not "substitute its judgment for that of the agency." *Id.*; *see also Havens v. Mabus*, 146 F. Supp. 3d 202, 214 (D.D.C. 2015), *aff'd*, No. 16-5016, 2016 WL 4098840 (D.C. Cir. July 22, 2016). Although judicial

review of military board decisions follows "familiar principles of administrative law," *Piersall v. Winter*, 435 F.3d 319, 321 (D.C. Cir. 2006) (citations omitted), those decisions "receive additional deference" because Congress has provided the Secretaries of military departments "wide discretion in deciding when to make corrections to military records." *Havens*, 146 F. Supp. 3d at 214; 10 U.S.C. § 1552(a)(1). In short, "judicial review in this context involves an unusually deferential application of the arbitrary or capricious standard of the APA," *Piersall*, 435 F.3d at 324 (quotation marks omitted), and "[a]djudication of these claims requires the district court to determine only whether the Secretary's decision making process was deficient, not whether his decision was correct." *Kreis v. Sec'y of Air Force*, 866 F.2d 1508, 1511 (D.C. Cir. 1989).

### III.    Analysis

The parties' motions for summary judgment raise two questions. First, what is the final agency action subject to this Court's review, and second, did that action comply with the Administrative Procedure Act? The Court concludes that the January 2023 Review Authority decision is the final agency action, and that it met the requirements imposed by the APA.

### A.    Final Agency Action

McGough argues that the Authority's January 2023 decision was final because the April 2023 memorandum merely "denie[d] rehearing of the prior order" and "is not itself reviewable." ECF No. 33 (Pl. Reply) (quoting *ICC v. Bhd. of Locomotive Eng'rs*, 482 U.S. 270, 280 (1978)). The Government retorts that the April 2023 memorandum did not merely deny rehearing but "denied Plaintiff's request to change his Other Than Honorable Discharge and further explained the Authority's January 2023 Decision that likewise had denied Plaintiff's request to change his discharge." ECF No. 36 (Govt. Reply). McGough has the better of the argument. Because "an agency's refusal to reconsider a final agency action does not create a new final agency action,"

*Historic E. Pequots*, 934 F. Supp. 2d at 279, the April 2023 memorandum addressing McGough's request for reconsideration does not constitute final agency action.

Start with the statute's text. The APA provides that a "person suffering legal wrong because of agency action . . . is entitled to judicial review thereof." 5 U.S.C. § 702. An "agency action" can be an "agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act." *Id.* § 551(13). But only "*final* agency action for which there is no other adequate remedy in a court [is] subject to judicial review." *Id.* § 704 (emphasis added). An agency action is considered "final" when two conditions are met: (1) "the action must mark the consummation of the agency's decisionmaking process—it must not be of a merely tentative or interlocutory nature"; and (2) "the action must be one by which rights or obligations have been determined, or from which legal consequences will flow." *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997) (citations and quotation marks omitted). In suits like this one, "agency action otherwise final is final . . . whether or not there has been presented . . . any form of reconsideration." 5 U.S.C. § 704.

The Authority's January 2023 decision had legal consequences, satisfying the second condition identified in *Bennett*: McGough's case was "returned to the [Review Board]" to issue "a decisional document in accordance with [the Authority's] decision." AR 30. The closer question is whether the January 2023 action "mark[ed] the consummation of the agency's decisionmaking process." *Bennett*, 520 U.S. at 178 (quotation marks omitted). The Government contends that it did not, because McGough then petitioned for reconsideration. *See* Govt. Mot. 12 ("The January 2023 Decision is not the final agency decision because Plaintiff's February 2023 request for reconsideration rendered the January 2023 non final."). But the relevant regulations provide that the "Secretary's or designee's action will be the final action," and that "[t]he petitioner has no right to a further review or to appeal this decision." 32 C.F.R. § 73.7(d); *see also id.*

§ 724.814(a) ("The Secretarial Review Authority (SRA) is the Secretary concerned or the official to whom Secretary's discharge review authority has been delegated.").

Resisting the regulatory text, the Government invokes several cases holding that if "a party asks an agency to reconsider its decision, the request 'renders [the] agency's otherwise final action non-final with respect to the requesting party.'" Govt. Mot. 12 (quoting *Milice v. Consumer Prod. Safety Comm'n*, 2 F.4th 994, 999 (D.C. Cir. 2021) and *Clifton Power Corp. v. FERC*, 294 F.3d 108, 110–11 (D.C. Cir. 2002)); *see also Bellsouth Corp. v. FCC*, 17 F.3d 1487, 1489–90 (D.C. Cir. 1994). But those cases are best read (at least in general) as establishing a prudential rule directing federal courts not to review a party's challenge to an agency action when the party has a concurrent challenge to the action pending before the agency itself. *See Clifton Power Corp.*, 294 F.3d at 111–12.[3] Those cases do not hold that if an agency denies a party's petition for reconsideration, the denial itself necessarily becomes the final agency action subject to judicial review.

To the contrary, "where a party petitions an agency for reconsideration on the ground of 'material error,' *i.e.*, on the same record that was before the agency when it rendered its original decision, 'an order which merely denies rehearing of the prior order is not itself reviewable." *Bhd. of Locomotive Eng'rs*, 482 U.S. at 280 (alterations adopted). That is true even where the agency's

---

[3] As the Court of Appeals has explained, "[t]here is good reason to prohibit any litigant from pressing its cause concurrently upon both the judicial and the administrative fronts: a favorable decision from the agency might yet obviate the need for review by the court." *Clifton Power Corp.*, 294 F.3d at 111–12; *see also id.* at 112 ("The costs of exercising the judicial power are simply too high to allow a litigant lightly to start down, only opportunistically to abandon, the path of judicial review, and the same danger of wasted judicial effort that attends the simultaneous exercise of judicial and agency jurisdiction arises whether a party seeks agency reconsideration before, simultaneous with, or after filing an appeal or petition for judicial review.") (internal citations and quotation marks omitted); *Bellsouth Corp.*, 17 F.3d at 1489 ("Even a modicum of concern for judicial economy militates strongly against concurrent review in this recurring situation.").

"order refusing reconsideration discussed the merits of the [petitioner's] claims at length." *Id.* Instead, "only when the agency has clearly stated or otherwise demonstrated that it has reopened the proceeding will the resulting agency decision be considered a new final order subject to judicial review." *Sendra Corp. v. Magaw*, 111 F.3d 162, 167 (D.C. Cir. 1997) (cleaned up).

The April 2023 memorandum does not state, clearly or otherwise, that the Authority was reopening the proceeding.  To be sure, the Authority provided "more detailed . . . findings" in "response to [McGough's] inquiry," AR 2, but the Authority expressly "decline[d] to grant the relief [McGough] requested"—namely, reconsideration of the January 2023 decision.  AR 1.  The April memorandum also did not address any "new evidence" or reflect "changed circumstances" compared to the January decision. *Bhd. of Locomotive Eng'rs*, 482 U.S. at 278.[4]  In short, because the April memorandum addressed only McGough's contention that the Authority's January 2023 decision "was arbitrary and capricious," AR 2, not any change in evidence or circumstances since that decision, the January decision was the final agency action.[5]

## B.  Arbitrary and Capricious

Having decided that the Authority's January 2023 decision is the final agency action, the next question is whether it complied with the APA.  In that decision, the Authority explained in seven terse paragraphs that because the Review Board's conclusion was "not supported by the

---

[4] *Cf. Green v. White*, 319 F.3d 560, 566 (3d Cir. 2003) ("[W]e conclude that any petition for rehearing to the [military review board] which does not include 'new evidence' or reflect some 'changed circumstances' does not re-start the six-year statute of limitations.  If, however, the [reviewer] re-opens a proceeding and rules upon a petition that does contain such new evidence, such a ruling will constitute a final agency action and will re-start the six-year time limit.").

[5] This conclusion also better effectuates the APA's final agency action requirement, as "a contrary rule"—holding that the April memorandum is final—"would provide parties with an easy means to circumvent the [finality requirement] applicable to actions under the APA, simply by writing a letter requesting reconsideration." *Impro Prods., Inc. v. Block*, 722 F.2d 845, 851 (D.C. Cir. 1983).

evidence of record," the Authority was "set[ting] aside" that decision and preserving McGough's characterization of service as "Under Other Than Honorable Conditions." AR 29. McGough argues that the January 2023 decision was arbitrary and capricious because it misrepresented the Review Board's decision, misunderstood the record, and failed to reasonably explain itself. *See* Pl. Mot. 12–22.[6]

The Government responds that the Authority "demonstrated a rational relationship between the facts found and [its] decision." Govt. Mot. 13. In making this argument the Government relies primarily on the Authority's April 2023 memorandum. *See id.* at 13–17; AR 1–6. Although an agency must typically rely on the rationale it gave when it took the challenged action, the Court finds that because the April memorandum is an amplified articulation of the January decision, the Authority's explanation suffices to survive arbitrary and capricious review.

As an initial matter, the Authority's decision benefits from the "unusually deferential application of the 'arbitrary or capricious' standard" in military discharge cases. *Kreis*, 866 F.2d at 1514. "This deferential standard is calculated to ensure that the courts do not become a forum for appeals by every soldier dissatisfied with his or her ratings, a result that would destabilize military command and take the judiciary far afield of its area of competence." *Cone v. Caldera*, 223 F.3d 789, 793 (D.C. Cir. 2000). Even if "the Navy could have undoubtedly offered a more detailed denial" of McGough's request, a "reviewing court will uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned." *Gillan v. Winter*, 474 F.3d 813, 819 (D.C. Cir. 2007) (cleaned up). "In fact, the Navy need only show that the [Review Authority]

---

[6] McGough also asserts that the Authority violated DOD Instruction 1332.28, which requires the Authority to provide a "list of the issues on which [its] decision is based." Pl. Mot. 22–23; AR 85. Because that argument also hinges on the adequacy of the January 2023 explanation, the Court analyzes it concurrently with McGough's arbitrary and capricious claim.

decision contains a 'rational connection between the facts found and the choice made.'" *Id.*
(quoting *State Farm*, 493 U.S. at 43).

To be sure, mere "conclusory statements . . . do not meet the requirement that 'the agency
adequately explain its result.'" *Dickson v. Sec'y of Def.*, 68 F.3d 1396, 1407 (D.C. Cir. 1995)
(quoting *Pub. Citizen, Inc. v. FAA*, 988 F.2d 186, 197 (D.C. Cir. 1993)).  And judicial review under
the APA must generally rest on the rationale the agency invoked at the time of its decision.  *See*
*SEC v. Chenery Corp.*, 318 U.S. 80, 95 (1943).  But this general prohibition on *post hoc*
rationalizations "does not prohibit [an agency] from submitting an amplified articulation of the
distinctions it sees." *Alpharma, Inc. v. Leavitt*, 460 F.3d 1, 6 (D.C. Cir. 2006) (citation omitted).
Instead, if an agency's prior explanation fails to fully explain its reasoning, the agency may "offer
a fuller explanation of [its] reasoning at the time of the agency action."  *See Dep't of Homeland*
*Sec. v. Regents of the Univ. of Cal.*, 591 U.S. 1, 20 (2020) (cleaned up).  In other words, the *post*
*hoc* justification doctrine "is not a time barrier which freezes an agency's exercise of its judgment
after an initial decision has been made and bars it from further articulation of its reasoning."
*Alpharma*, 460 F.3d at 6 (citation omitted).  The agency "may elaborate later on that reason (or
reasons)" so long as it does "not provide new ones." *Regents*, 591 U.S. at 21 (quoting *Camp v.*
*Pitts*, 411 U.S. 138, 143 (1973) (*per curiam*)).

The question is thus whether the Authority's April 2023 memorandum supplied a rationale
for reversing the Review Board's decision that differed from the reasons given in January 2023.
In January, the Authority noted that it consulted the following sources: the Board of Inquiry
transcript and associated records and evidence, the Review Board's case file, McGough's
testimony and post-service conduct, and character statements provided by McGough's peers.  AR
30.  "After reviewing" that material, the Authority was "convinced that a preponderance of the

evidence supports the specified reason for separation, separation from Naval service, and a characterization of service as Other than Honorable." AR 30. The Authority also "considered whether clemency was appropriate" and, after reviewing McGough's post-service conduct and character statements, similarly concluded that McGough's characterization of discharge should not be upgraded on those grounds. AR 30.

McGough argues that this reasoning is inconsistent with *State Farm*, characterizing it as saying no more than "go read the whole record; the answer is in there somewhere." Pl. Mot. 23. He further contends that the Authority seemingly misunderstood the Review Board's decision because the Authority wrote (in its summary of the proceedings, not its reasoning) that the Review Board "found persuasive the Applicant's contention that his [Board of Inquiry] was biased." AR 29. In fact, the Review Board did not say that the Board of Inquiry was biased, *see* AR 56–57, which in McGough's view demonstrates that the Authority's decision was "directly contrary to the evidence in front of him, namely the evidence of the [Review Board's] actual opinion, which he does not appear to have read with any care." Pl. Mot. 15. McGough also notes that the Authority's emphasis on procedural regularity implies that the Review Board treated the Board of Inquiry proceeding as irregular, when in fact the Review Board found that McGough's discharge was proper but not equitable. Pl Mot. 16; AR 56–57. The thrust of McGough's argument is that because the Authority must have barely read (or misunderstood) the Review Board's decision, the Authority's decision is *per se* arbitrary and capricious. *See* Pl. Mot. 16.

Without accepting all of McGough's characterizations of the January 2023 decision, the Court agrees that it, standing on its own, likely does not meet the standards for reasoned decision making required by the APA. The Authority's "boilerplate language" "makes it impossible to discern the [Authority's] 'path.'" *Dickson*, 68 F.3d at 1405. The Court "cannot determine whether

the decision making process was deficient until [it is] allowed to understand what that process was," *id.* at 1405–06, and the conclusory statements in the January 2023 decision do not meet the requirement that "the agency adequately explain its result." *Pub. Citizen*, 988 F.2d at 197. "Because the [Authority] only listed the facts and stated its conclusions, but did not connect them in any rational way," if forced to stand alone, the January decision would likely be arbitrary and capricious. *Dickson*, 68 F.3d at 1407.

But that decision does not stand alone, because the Authority's April 2023 memorandum amplified it without differing from its reasoning. To reiterate, the January decision held that there were no grounds for changing McGough's discharge characterization because the Board of Inquiry transcripts and records, as well as the Review Board case file, contained sufficient evidence to support McGough's separation under Other than Honorable conditions. AR 30, ¶ 4. The Authority further noted that it "also considered whether clemency was appropriate," reviewing McGough's testimony before the Board of Inquiry, his post-service conduct, and character statements submitted on McGough's behalf. AR 30, ¶ 5. And "while [the Authority] commend[ed]" McGough for his "post-service efforts," it did "not find those efforts [] persuasive to warrant an upgrade on the basis of clemency to [McGough's] characterization of service and reason for discharge." *Id.*

Where the January decision referenced the Board of Inquiry transcript in general terms, the April memorandum noted specific aspects that informed the Authority's decision: namely, McGough's violation of the Military Protective Order and the nine witnesses (including McGough) who testified before the Board of Inquiry. AR 4–5. The April memorandum additionally explained that the Board of Inquiry's findings—which stated that McGough's behavior included "[h]arassing fellow junior officers, violating a [Military Protective Order],

sexually assaulting a shipmate, and substandard performance"—and its subsequent unanimous vote "weighed heavily in [the Authority's] decision to set-aside the [Review Board's] decision." AR 5–6.  And, the Authority stated, the weight it placed on the Board of Inquiry's findings drove its conclusion that an Other Than Honorable discharge was "equitable in light of [McGough's] misconduct."  AR 6.  Finally, the Authority reiterated that clemency was not warranted, despite McGough's post-service conduct and character references.  AR 6.

The only arguably novel addition in the April memorandum is the Authority's use of the term "equitable"—the basis on which the Review Board had upgraded McGough's discharge and a concept not expressly addressed in the January decision.  But an agency decision need not "follow a particular formula or incant magic words" to survive judicial review.  *Garland v. Ming Dai*, 593 U.S. 357, 369 (2021).  "To the contrary, a reviewing court must 'uphold' even 'a decision of less than ideal clarity if the agency's path may reasonably be discerned.'"  *Id.* (quoting *Bowman Transp., Inc. v. Arkansas-Best Freight System, Inc.*, 419 U.S. 281, 286 (1974)).  Here, the January decision appears no less considerate of equitable factors than the April memorandum.  "Review for equity looks to whether, considering all the factual circumstances surrounding an applicant's history and service record . . . an otherwise proper discharge ought to be upgraded as a matter of equity."  *Vietnam Veterans of Am. v. Sec'y of the Navy*, 843 F.2d 528, 531–32 (D.C. Cir. 1988) (quotation omitted).  The January decision "consider[ed] all the factual circumstances" by reviewing the Board of Inquiry transcript and associated records.  AR 30.  The decision also noted that it reviewed the Review Board "case file," *id.*, which echoes its obligation to consider "other evidence presented to the [Review Board]" when considering whether a discharge is equitable.  32 C.F.R. § 70.9(c)(3).  Finally, the January decision's discussion of clemency further conveys the Authority's consideration of equitable factors; after all, the Navy's Discharge Review Board

Manual lists clemency under the equitable umbrella.[7]  The path from the January decision to the April elaboration is thus easy to discern.

In short, and especially given the deference owed to military tribunals in these cases, *see Kreis*, 866 F.2d at 1514, the Authority's decision appears both "reasonable and reasonably explained."  *FCC v. Prometheus Radio Project*, 592 U.S. 414, 423 (2021).  Because the Court "cannot say that [the decision] fell outside the zone of reasonableness for purposes of the APA," the Government is entitled to summary judgment.  *Id.* at 427–28.

## IV.    Conclusion

For the foregoing reasons, the Government's Motion for Summary Judgment, ECF No. 30, is granted, and McGough's Motion for Summary Judgment, ECF No. 23, is denied.  A separate Order accompanies this Opinion.


DATE:  September 29, 2025

_Carl J. Nichols_
CARL J. NICHOLS
United States District Judge

---

[7] *See* SECNAV M-5420.1, Chap. 2, ¶ 210(b)(3)(d).  Paragraph 210 provides that the "following criteria will be considered when determining the appropriateness of an application for discharge review: a. Propriety" and "b. Equity."  The equity subparagraph provides that a discharge "shall be deemed equitable unless . . . (3) In the course of a discharge review, it is determined that relief is warranted based upon consideration of the applicant's service record and other evidence presented to the [Review Board] viewed in conjunction with the factors listed in this subparagraph . . . .  Areas of consideration include, but are not limited to: . . . (d) Clemency."